JUDGE OETKEN

**12 CIV 5184**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSE PEGUERO, father of the deceased and on behalf of the deceased
Maximo Peguero; RAFAELA CABRAL, mother of the deceased,
and on behalf of the deceased Maximo Peguero[1],
                          Plaintiffs,

                                                                         COMPLAINT
                                                                         JURY TRIAL DEMANDED

        -Against-

THE CITY OF NEW YORK, NEW YORK CITY LAW
DEPARTMENT, and POLICE OFFICER "JOHN" LABATE,
In his individual capacity, SERGEANT DANIEL SWARTZ,
In his individual capacity, and JOHN DOES I through VII,
whose true identities are unknown, in their individual capacities,
                          Defendants
------------------------------------------------------------------X

       Plaintiffs, JOSE PEGUERO, father of the deceased and on behalf of the deceased Maximo Peguero; RAFAELA CABRAL, mother of the deceased, and on behalf of the deceased Maximo Peguero, allege as follows

       I.    INTRODUCTION

       1.    This is an action pursuant to 42 U.S.C. Section 1983, to vindicate the civil rights of JOSE PEGUERO, father of the deceased and on behalf of the deceased Maximo Peguero; RAFAELA CABRAL, mother of the deceased, and on behalf of the deceased Maximo Peguero, who was 28 years old at the time of his murder.

       2.    JOSE PEGUERO and RAFAELA CABRAL contend that defendants used excessive force against their son and murdered him without justification or due process of law.

---

[1] Letters of Administration have been issued to plaintiffs pursuant to Section 5:9.6 of the New York Estates, Powers and Trusts Law.

II. JURISDICTION

3. This Court has jurisdiction over this action under 42 U.S.C. Section 1983 and the 4th, 5th, 8th and 14th Amendments of the Constitution of the United States. Venue is proper, as the operative events occurred within this judicial district.

III. PARTIES

4. Plaintiffs, JOSE PEGUERO and RAFAELA CABRAL, respectively reside in The Bronx and The Dominican Republic. They sue in their individual capacities and on behalf of their deceased son, Maximo Peguero who resided in New York, New York at the time of his murder. Letters of Administration have been issued to them by the New York Surrogate's Courts.

5. CITY OF NEW YORK is a state actor for 42 U.S.C. Section 1983 purposes. Defendant may sue and be sued, and its principle place of business is in New York County, New York. At all relevant times, the CITY OF NEW YORK employed the individual defendants listed herein. The CITY OF NEW YORK is herein sued for having violated plaintiff's civil rights while acting under color of state law and/or acting pursuant to its own practices, customs and policies

6. POLICE OFFICER "JOHN" LABATE, in his individual capacity, SERGEANT DANIEL SWARTZ, and JOHN DOES I, II and III, at all relevant times, were employed with the City of New York, as police officers. At all relevant times, they acted under color of state law and pursuant to the practices, policies and customs of the City of New York. They are herein sued in their individual capacities for violating Maximo Peguero's civil rights and killing him without justification. However, their

identities are not yet known, and thus, plaintiff reserves the right to amend the caption and the Complaint once their names become known.

IV.   FACTUAL AVERMENTS

7.   On or about of July 22, 2009, and upon information and belief, one or more vehicles assigned to the New York City Police Department, pursued a vehicle which was being operated by the decedent, Maximo Peguero.

8.   The vehicles assigned to the New York City Police Department, pursued the vehicle operated by the decedent, Maximo Peguero, from on or about a location near West 170th Street and St Nicholas Avenue, to a location on or about West 188th Street and Amsterdam Avenue, in New York, New York.

9.   Upon information and belief, occupants of the vehicles assigned to the New York City Police Department were Officer "John" Labate and Sergeant Daniel Swartz and other New York City Police Officers and/or Detectives who communicated with various police dispatches and/or commands during the course of a pursuit of the vehicle operated by the decedent, Maximo Peguero.

10.   Upon information and belief, other New York City Police Officers and/or Detectives, including Officer "John" Labate and Sergeant Daniel Swartz, by order and/or imprimatur of the New York City Police Department, joined the pursuit and/or positioned vehicles assigned to the New York City Police Department, so as to block the progress of the vehicle operated by the decedent, Maximo Peguero.

11.   The pursuit came to a stop at a location near West 188th Street and Amsterdam Avenue, in New York, New York. There, upon information and belief, New York Police Officers, Officer "John" Labate and Sergeant Daniel Swartz, approached the

vehicle that had been operated by the decedent, Maximo Peguero, as Peguero backed the vehicle away from the officers. Peguero's backing away from Officers posed no immediate threat to the officers' lives or to the lives of any one else in the immediate area of the vehicle.

12. Upon information and belief, the New York City Police Officers, including Officer "John" Labate and Sergeant Daniel Swartz, fueled from the adrenaline of an alleged pursuit, fired shots from in front of and slightly from the side of the vehicle operated by Peguero as he attempted to back away from them. At least one bullet stuck Peguero in the base of his neck.

13. Shortly after the shots were fired, other New York City Police Officers arrived on the scene and began to take passengers out of the vehicle Peguero had been operating.

14. These passengers had their hands over their heads. However, police officers "John" Labate and Sergeant Daniel Swartz, and other John Doe defendants fueled from the adrenaline of an alleged pursuit threw, these passengers to the ground and proceeded to punch and kick the passengers numerous times, causing one or more of them to sustain serious injuries.

15. Peguero was the last person taken out of the vehicle he had been operating. He was dragged out of the vehicle and was bleeding profusely at the time. Upon information and belief, he was alive at the time, and even moved his head from side to side.

16. No effort was made to immediately treat Peguero's wounds.

17. Unfortunately, Peguero later died from his gunshot wound.

18. An autopsy report concluded that Peguero's cause of death was "homicide."

19. The murder was witnessed by residents who confirmed that Peguero was no threat to the police officers and/or Detectives at the location of West 188th Street where the murder occurred.

20. Moreover, upon information and belief, uniformed and non-uniformed members of the New York City Police Department actively sought to muzzle and to suppress any evidence of wrongdoing of their part.

21. Further, officers erased video footage capturing members of the New York City Police Department exacting physical revenge upon the occupants of the vehicle operated by Maximo Peguero for having taken them (members of New York City Police Department) on a pursuit.

22. Had decedent survived the incident of July 22, 2009, he would have had causes of action against defendants for wrongful conduct under the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution as secured by 42 U.S.C. Section 1983.

23. Upon information and belief, by dint of defendants' wrongful acts, decedent experienced conscious pain and suffering immediately before his death.

24. Jose Peguero and Rafaela Cabral maintained a close relationship with their son, of which they now have been deprived, causing them severe emotional distress.

25. Defendants' actions against decedent, Maximo Peguero were undertaken pursuant to municipal policies, practices and customs and under color of state law. Indeed, it is a long-standing practice that suspects allegedly fleeing police are subjected

to excessive uses of force once such chases are terminated. Further, the City of New York has long tolerated acts of excessive use of force against the City's minority population, including but not limited to, residents of Washington Heights where the instant homicide occurred.

26. Moreover, decedent, Maximo Peguero's right to be free of excessive force and/or cruel and unusual punishment without due process of law, are clearly established, and reasonable persons employed by defendants are aware, or have reasons to be aware of this.

27. The conduct of individual defendants was outrageous and was done with reckless indifference to decedent's, protected civil rights, thereby entitling plaintiffs to an award of punitive damages as against the individual defendants.

V.   FIRST CAUSE OF ACTION

28. Plaintiffs hereby repeat and reallege each and every paragraph above.

29. By using excessive force against decedent, and by causing and/or allowing his death without justification, thereby depriving his parents of his companionship and association, defendants violated the 4th, and 8th Amendments of the United States Constitution as secured by 42 U.S.C. Section 1983.

SECOND CAUSE OF ACTION

30. Plaintiffs hereby repeat and reallege each and every paragraph above.

31. By using excessive force against decedent, and by causing and/or allowing his death without due process of law, thereby depriving his parents of his companionship and association, defendants violated the 5th and 14th Amendments of the United States Constitution as secured by 42 U.S.C. Section 1983.

VI.   PRAYER FOR RELIEF

32.   WHEREFORE, plaintiffs pray that this Court grant judgment to them containing the following relief:

a.   An award of plaintiffs' actual damages in an amount to be determined at trial.

b.   An award of compensatory damages to compensate plaintiffs for mental anguish, humiliation, embarrassment, emotional injury, loss of companionship and association.

c.   An award of punitive damages as against the individual defendants;\

d.   An order enjoining defendants from engaging in the wrongful practices alleged herein;

e.   An award of reasonable attorneys' fees and the costs of this action and,

f.   Such other and further relief as this Court may deem just and proper.


Dated: New York, New York
       July 2, 2012

                                    Respectfully Submitted,
                                    Law Offices of Ambrose Wotorson
                                    By_____
                                    Ambrose W. Wotorson (AWW—2412)
                                    26 Court Street, Suite 1811
                                    Brooklyn, New York 11242

                                    (718) 797-4861